# EXHIBIT A

# Complaint

# EXHIBIT A

Electronically Filed
4/29/2022 1:32 PM
Steven D. Grierson
CLERK OF THE COURT

**PHILIP J. TRENCHAK, ESQ.**
Nevada State Bar No. 009924
**MULLINS & TRENCHAK, ATTORNEYS AT LAW**
1614 S. Maryland Parkway
Las Vegas, Nevada 89104
P: (702) 778-9444
F: (702) 778-9449
E: phil@mullinstrenchak.com
Attorney for Plaintiff
*Katie Pacheco*

CASE NO: A-22-851897-C
Department 27

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

KATIE LYNN PACHECO,
an individual,

                    Plaintiff,

vs.

VIRTUS COMMERCIAL, LLC, doing business
as a Nevada Limited Liability Company,

                    Defendant.

CASE NO.:

DEPT NO.:

**COMPLAINT**

Causes of Action:

1. **Tortious Discharge in Violation of Whistleblower;**
2. **Failure to Pay Overtime in Violation of NRS 608.018 and 608.140; and,**
3. **Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.020-608.050 and 608.140**

**LIEN REQUESTED PURSUANT TO NRS 608.050**

        Plaintiff, KATIE LYNN PACHECO (hereinafter "Plaintiff" or "Ms. Pacheco") by

and through her attorney PHILIP J. TRENCHAK, Esq., of Mullins and Trenchak, Attorneys at

Law, hereby brings suit against VIRTUS COMMERCIAL, LLC, a Nevada Limited-Liability

Company, avers and alleges as follows:

///

## PARTIES

1.       Plaintiff is, and was at all times material to this action, an individual, residing in the State of Nevada, employed by Defendant.

2.       Plaintiff is informed and believes, and thereupon alleges, that Defendant is, and was at all times material to this action, conducting business in the state of Nevada, in the County of Clark.

## JURISDICTION AND VENUE

3.       Jurisdiction is proper as the Defendant operates its business within the State of Nevada and Plaintiff is a resident of the State of Nevada and performed all work at Defendant's business within the State of Nevada.

4.       This Court has original jurisdiction over the state law claims alleged herein as the amount in controversy exceeds $15,000.

5.       A party seeking to recover unpaid wages has a private right of action pursuant to the Nevada Constitution, Article 15 Section 16, and Nevada Revised Statute sections 608.050 and 608.140. See Neville v. Terrible Herbst, Inc., 133 Nev. Adv. Op. 95 (Dec. 7, 2017).

6.       Plaintiff claims a private cause of action to foreclose a lien against the property owner for wages due pursuant to NRS 608.140.

7.       Plaintiff made a proper demand for wages due pursuant to NRS 608.140 on March 30, 2022. See Attached Exhibit A, Demand Letter.

8.       Plaintiff made a ten (10) day demand for records under NRS 608.115 on March 30, 2022. See Attached Exhibit A, Demand Letter.

9.       Defendant signed for the Demand Letter, and Defendant retained Counsel. See Attached Exhibit C & D, Signed Receipt of Certified Mail and Letter of Representation from

Defendant's Attorney.

10.     Venue is proper as Defendant's business is located within the Eighth Judicial District of the State of Nevada.

## **GENERAL ALLEGATIONS**

11.     Ms. Pacheco was hired for the position of property manager and began working for Defendant on or about December 20, 2021.

12.     Ms. Pacheco was unlawfully terminated for alleged "defamation of the company" on March 4, 2022.

13.     This "defamation of the company" allegation was made during a meeting that took place on March 4, 2022.

14.     The alleged "defamation of the company" was alleged to have taken place during the prior meeting on March 3, 2022 with supervisors that Ms. Pacheco raised concerns with regarding illegal activities that were actively taking place at the Defendant's company.

15.     Ms. Pacheco never published these concerns to any third party aside from the Government Agency tasked with regulating the Defendant's Company.

16.     Ms. Pacheco informed these supervisors, during her meeting on Marc 3, 2022, that she had filed a complaint with the Real Estate Division of the Business and Industry Division of the state of Nevada concerning these illegal activities.

17.     It is not known whether or not the government agency informed Defendant's Company of the complaint Ms. Pacheco had filed on March 2, 2022.

18.     Ms. Pacheco was told she was terminated for "defamation" of the company at the meeting she had with her supervisors on March 4, 2022.

19.     This claim on the part of the firm is erroneous because her alleged defamation

was made in the form of a protected whistleblower complaint.

20.    Ms. Pacheco also made a complaint that she was being forced to work illegally at the meeting of March 3, 2022.

21.    Defamation, by its very definition, does not involve an employee making a privileged complaint to a government entity that has authority over the regulation of the operation of Employer's business.

22.    Ms. Pacheco was terminated based upon a complaint she filed with the Division of Business and Industry - Real Estate Division on March 2, 2022, a mere two days prior to her termination and concerns that Plaintiff voiced that she was being forced to engage in illegal activities as part of her job duties.

23.    Ms. Pacheco had no indication from Defendant's Company that job performance was an issue because Defendant had not informed Ms. Pacheco that there were any issues prior to March 3, 2022.

24.    Ms. Pacheco's complaint was that Ms. Pacheco's supervisor at the firm was at that time without a property manager license, yet, was performing duties that can only be performed by someone with a property manager license.

25.    Ms. Pacheco was also reasonably concerned that such actions could have a negative impact on her license and the licenses of other employees under the supervision of this individual.

26.    Ms. Pacheco expressed concerns that she was putting her own real estate license in legal jeopardy as she was being forced to commit an illegal act in working without a licensed broker on property.

27.    Ms. Pacheco followed up the meeting with her supervisors with the following

email sent as a follow-up (March 3, 2022 at 3:13:44PM PST) after the meeting Ms. Pacheco had

with her supervisors:

> Hello all,
>
> Just wanting to follow up as I feel the matter is urgent and should be dealt with as such. I will NOT purposefully violate the law as a means to retain my employment especially since there is a pending investigation with NRED. I would like to know how/if it is legal for me to conduct my duties when the broker has **never** been onsite since I started working here in 12/20/2022 and there are several individuals performing duties without proper licensing. I fear that me performing my duties might be illegal as there is no broker supervision and it is a violation to assist others in unlicensed activities.
>
> I would also like to request that the retaliatory behavior stop as I just want to make sure that I am not putting my license in jeopardy.
>
> Thank you,
>
> Katie Pacheco

See Attached Exhibit F, Emails regarding write-up (emphasis added).

28.     Ms. Pacheco sent additional emails forwarded with the one quoted immediately

above. Id.

29.     Ms. Pacheco went on in her March 3, 2022 emails to quote the specific Nevada

Revised Statutes that she felt were being violated by the Defendant's Company which were NRS

645.230 and NRS 645.235.

30.     NRS 645.230 is titled "Unlawful to engage in certain conduct without license or

permit without complying with certain provisions of chapter; power of Real Estate Division to

file Complaint with court and assist in prosecution of violation; prosecution by district attorney

of Attorney General."

31.     NRS 645.235 is titled "Administrative fine for engaging in certain conduct

without license, permit, certificate, registration or authorization; procedure for imposition of fine;

judicial review; exceptions."

32.     Nevertheless, Ms. Pacheco was terminated on March 4, 2022 for allegedly defaming the company, which did not occur under the legal definition of "Defamation."

33.     Defendant has attempted to advance the defense that Whistleblowing activity that serves a public purpose is protected but that Ms. Pacheco's whistleblowing activity was based on her own self-interest (avoiding termination) and therefore, not protected. *Allum v. Valley Bank of Nevada,* 114 Nev. 1313, 970 P.2d 1062 (1998).

34.     Defendant's anticipated response holds no water as Ms. Pacheco filed her Complaint with the Division of Business & Industry - Real Estate Division on March 2, 2022. See Attached Exhibit F, Complaint to the Department of Business & Industry-Real Estate Division.

35.     Ms. Pacheco made this complaint prior to being made aware that there were any issues concerning her work performance.

36.     This was Ms. Pacheco's first and only write-up.

37.     Ms. Pacheco was not given a copy of the write-up.

38.     The State of Nevada has a public policy of encouraging the reporting of illegal behavior in the interest of the public good, the decision to expose illegal or unsafe practices should be encouraged and therefore the individual making the report should be protected. *Allum v. Valley Bank of Nevada,* 114 Nev. 1313, 970 P.2d 1062 (1998).

39.     Ms. Pacheco's termination was in retaliation for making a legal, privileged, and protected complaint to the state of Nevada, and then voicing those concerns to her employer, and therefore, the termination was unlawful.

40.     Ms. Pacheco was told she was being terminated for the very specific issues she brought up regarding her concerns about the illegality of the company's practices.

41.     The Defendant's Company effectively informed Ms. Pacheco that she was being terminated because Ms. Pacheco was aware of the illegality of Defendant's business practices.

42.     During the meeting of March 3, 2022, Ms. Pacheco also brought up the fact that she was being asked to break the law through the action involving Defendant's broker not being present on property.

43.     Plaintiff believes that Defendant misrepresented the reason for termination via correspondence received in response to Plaintiff's Demand Letter as "Defamation" of the Company is clearly not mentioned in the write-up nor in the Employer's Response of April 27, 2022.

44.     Ms. Pacheco's former supervisors explicitly and verbally state the reasons for termination which occurred on March 4, 2022, was for disparaging the company at the meeting of March 3, 2022.

45.     Ms. Pacheco followed up the March 3, 2022 meeting with an email which is attached to this Complaint. See Attached Exhibit F.

46.     Furthermore, Ms. Pacheco's employer was obligated to pay Ms. Pacheco an hourly wage, including overtime, in accordance with the Fair Labor Standards Act and Nevada Revised Statutes.

47.     Ms. Pacheco agreed to accept an annual salary of $70,000 per year on or about December 20, 2021.

48.     Yet, due to the nature of Ms. Pacheco's work for the Defendant, even though she was misclassified as a "salaried employee" she was functionally and legally a "non-exempt" employee under the Fair Labor Standards Act and under the Nevada Revised Statutes.

49.     She was placed on salary despite the fact that Ms. Pacheco was a "non-exempt"

employee under the Fair Labor Standards Act and the Nevada Revised Statutes and therefore she was due overtime wages.

50.     According to the Fair Labor Standards Act (FLSA), Ms. Pacheco was an hourly employee due overtime wages.

51.     Though there are several employee types that are exempt from overtime rules outlined in §13(a)(1) of the FLSA, those types of employees must meet certain requirements.

52.     The exemption that would come closest to applying to Ms. Pacheco's role with the firm is the "Administrative Exemption."

53.     To qualify for the administrative employee exemption, all of the following tests must be met:

   -The employee must be compensated on a salary or fee basis (as defined in the regulations) at a rate not less than $684* per week;
   -The employee's primary duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
   -The employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

54.     While Ms. Pacheco meets two of the three requirements for an administrative exemption, she was not allowed the "exercise of discretion" nor was she empowered to exercise "independent judgment with respect to matters of significance." See Attached Exhibit E, Job Description and Job Task Description.

55.     The position Ms. Pacheco worked in offered very little autonomy and Ms. Pacheco was required to obtain authorization with no ability to make her own judgment based upon Ms. Pacheco's own discretion. Id.

56.     Therefore, Ms. Pacheco was a non-exempt employee due overtime wages according to the Fair Labor Standards Act.

57.     In a case with a similar set of facts, the Federal District Court found that a Property Manager was improperly classified as exempt under the FLSA. See Harger v. Fairway Mgmt., Inc. United States District Court for the Western District of Missouri 2:15-cv-15-4232 (July 4, 2015).

58.     According to the Nevada Revised Statutes, Ms. Pacheco was an employee due overtime wages.

59.     Like the FLSA, the Nevada Revised Statutes provides exceptions to the overtime wage rule in NRS 608.018; however, as is the case with the FLSA, none of the exemptions apply to Ms. Pacheco.

60.     Under both the FLSA and the Nevada Revised Statutes, Ms. Pacheco's work does not qualify her as an employee exempt from overtime wages.

61.     As such, the employer was obligated to compensate Ms. Pacheco for any overtime worked.

62.     The Court should find that Ms. Pacheco was acting as an "non-exempt employee" and treat her accordingly under the instant set of facts.

63.     The Compensation agreed upon by Ms. Pacheco and Employer on or about December 20, 2021 was $33.65 per hour.

64.     This hourly wage was determined by dividing annual salary by fifty-two (52) weeks and then dividing that number by forty (40) to indicate the standard work week.

65.     Ms. Pacheco worked at the office from 8:30 am to 5:00 pm Monday-Friday and remained working after hours at her home until 7:00 pm on Monday through Friday.

66.     Ms. Pacheco worked three (3) hours per day on Saturday and Sunday.

67.     Ms. Pacheco was employed for ten and a half (10.5) weeks between December

20, 2021 and March 4, 2022.

68.     Therefore, the net result of missed overtime per week is eighteen and a half (18 1/2) hours per week of unpaid overtime.

69.     This leaves a total of 195.5 hours of unpaid overtime at a pay rate of one and a half (1.5) times her hourly rate of $33.65.

70.     Ms. Pacheco is currently owed $9,867.86 in unpaid overtime.

71.     Overtime rules pursuant to NRS 608.018:

**NRS 608.018(1)&(2)   Compensation for overtime: Requirement; exceptions.**
1.   An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate set forth in NRS 608.250 works:
(a) More than 40 hours in any scheduled week of work; or
(b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.
2.   An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate set forth in NRS 608.250 works more than 40 hours in any scheduled week of work.

72.     Wage Records are covered by NRS 608.115.

73.     In regard to wage records, NRS 608.115(1) states the following:

1.   Every employer shall establish and maintain records of wages for the benefit of her or her employees, showing for each pay period the following information for each employee:
(a) Gross wage or salary other than compensation in the form of:
(1) Services; or
(2) Food, housing or clothing.
(b) Deductions.
(c) Net cash wage or salary.
(d) Except as otherwise provided in NRS 608.215, total hours employed in the pay  period by noting the number of hours per day.
(e) Date of payment.

74.     Under NRS 608.115(2), "The information required by this section must be furnished to each employee within 10 days after the employee submits a request."

75.     Additionally, NRS 608.115(3) requires that the employer retain these records for

two (2) years.

76.     Pursuant to the foregoing, Ms. Pacheco requested all available records on the determination of her pay as listed in NRS 608.115 used in the compensation determination for the duration of her employment on March 30, 2022.

77.     This request included all information utilized to determine Ms. Pacheco's pay as listed above in NRS 608.115(1).

78.     Pursuant to NRS 608.115, Ms. Pacheco legally and lawfully demanded that the Employer provide all records, including all payments and tracking of Ms. Pacheco hours, as well as all records of payments in her initial demand letter.

79.     Defendant has provided sparse records almost a month after these records were requested.

80.     The FLSA and the NRS were violated by employer when employer refused payment of overtime wages owed to Ms. Pacheco.

81.     The Employer has violated Nevada law requiring prompt payment of wages for work performed. See NRS 608.060.

82.     Ms. Pacheco appears to have been terminated for an unlawful reason ten and a half (10.5) weeks after Ms. Pacheco began working for Employer.

83.     Ms. Pacheco was told that she was terminated for defaming the employer's company and not given any other reason on the final meeting of March 4, 2022.

84.     Under NRS 608.020, a discharged employee must be given immediate payment.

85.     Pursuant to NRS 608.040(1)(B), "If an employer fails to pay on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit or was discharged

until paid or for 30 days, whichever is less."

86.     Ms. Pacheco has base earnings of $33.65 per hour which equals $269.20 per day on average.

87.     Therefore, since the termination occurred on March 4, 2022, Ms. Pacheco is owed $8,076.00 which is $269.20 per day up to and including the full thirty (30) days allowed after employment was terminated. See NRS 608.040(1)(B).

88.     NRS 608.050 provides that Ms. Pacheco possesses an employee's lien against the Employer's Company for the unpaid wages. Furthermore, NRS 608.190 states the following:

**Willful failure or refusal to pay wages due prohibited.** A person shall not willfully refuse or neglect to pay the wages due and payable when demanded as provided in this chapter, nor falsely deny the amount or validity thereof or that the amount is due with intent to secure for the person, the person's employer or any other person any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay or defraud the person to whom such indebtedness is due.

89.     Employer is currently unlawfully withholding wages earned by Ms. Pacheco for work that has already been performed.

90.     Because Ms. Pacheco was incorrectly classified as an exempt employee, she is due overtime wages and those wages are in arrears.

91.     NRS 608.060 states that wages must be paid contemporaneously within the statutorily prescribed time frame in which those wages were earned.

92.     The mileage which was discussed and agreed upon as stated in the Offer Letter is attached as Exhibit A.

93.     The total amount that Ms. Pacheco is owed pursuant to the mileage log is $292.77. Id.

94.     The Defendant has offered to pay for the mileage and nothing else.

95.     Attorney Fees will begin to accrue five (5) days after this demand letter is received

prior to a lawsuit. See NRS 608.140.

96.      NRS 608.140 provides the following regarding Attorney Fees:

**Assessment of attorney's fees in action for recovery of wages.**   Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of her or her employment, and shall establish by decision of the court or verdict of the jury that the amount for which he or she has brought suit is justly due, and that a demand has been made, in writing, **at least 5 days before suit was brought**, for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit.

See NRS  608.140.

97.      Ms. Pacheco was unlawfully terminated by Employer for making a good faith complaint protected by Nevada law.

98.      Ms. Pacheco is also currently owed $9,867.86 in unpaid overtime.

99.      Ms. Pacheco is also owed a civil penalty of  $8,076.00 which consists of $269.20 per day up to and including a full thirty (30) days after employment was terminated on March 4, 2022. See NRS  608.040(1)(B).

100.      Additionally, please note that all records requested above should have been forwarded to the above law firm within the ten (10) days as specified in NRS 608.115(2) but they were not.

101.      Defendant was sent a detailed demand of the records requested by the Plaintiff on March 30, 2022. See Attached Exhibit A, Demand Letter.

102.       Defendant received the Demand Letter on April 1, 2022. See Attached Exhibit C, Signed Certified Mail Receipts, as well as tracking information.

103.      Defendant acknowledged receipt of the Demand Letter, with the requests for records pursuant to NRS 608.115, on April 8, 2022, by email. See Attached Exhibit D, Letter of Representation of Defendant.

104.     Defendant's Counsel requested up to and including April 22, 2022 to respond to Plaintiff's Demand Letter which was agreed to by Plaintiff's Counsel. Id.

105.     Plaintiff's Counsel submitted a final email informing Defendant's Counsel that a response was not received on April 22, 2022. Id.

106.     No further correspondence was received from Defendant's Counsel until April 27, 2022.

107.     Plaintiff suffered additional damages set forth in this Complaint.

## FIRST CAUSE OF ACTION
### Wrongful Termination in violation of public policy-Whistleblower

108.     Plaintiffs incorporate all allegations in the preceding paragraphs as though fully set forth herein.

109.     The Wrongful Discharge Public Policy Tort occurs when the Defendant (employer) improperly dismissed plaintiff (employee) for reasons that violate public policy. *Wayment v. Holmes,* 112 Nev. 232, 912 P.2d 816 (1996).

110.     Plaintiff brought up illegal activity to her supervisors that was occurring at Defendant's place of business.

111.     Plaintiff was being forced to engage in the aforementioned illegal activity and discussed it with her supervisors.

112.     Plaintiff made a complaint to the appropriate State Governing Authority that regulates the Defendant's business practices.

113.     Plaintiff went to the appropriate Governmental Authority prior to being counselled regarding her performance.

114.     Defendant terminated Plaintiff for "Defaming the Company."

115.     Defendant has defended the reasons for termination by asserting the following:

Due to these attendance and performance issues, Ms. Pacheco was personally counseled at least three times in the two weeks immediately prior to her termination. Id. She was also brought into a meeting to discuss these issues on March 3, 2022. However, Ms. Pacheco refused to take responsibility for her actions and behaved in an unprofessional manner. These issues in combination led to Ms. Pacheco's termination on March 4, 2022.

116.    The issue stated "[b]ehaved in an unprofessional manner" being discussed must have been Ms. Pacheco raising the issue of the illegality of the working conditions she was working under and the ensuing emails which also outline the illegality of Defendant's Company's working conditions. See Attached Exhibit F Emails regarding write-up.

117.    Plaintiff made audio recordings of the meetings of March 3, 2022 and March 4, 2022 in full.

118.    These recordings are accurately described in the herein pleading.

119.    The express reason for termination was clearly audibly stated as "Defamation of the Company."

120.    This reason is notably missing from the provided write-up the Defendant provided and the response from the Defendant explaining the reason for termination.

121.    Plaintiff has been seriously harmed, economically and emotionally by this wrongful termination and is entitled to be fully compensated therefor.

122.    Plaintiff had to engage in the services of attorneys for representation in this matter and are entitled to an award of reasonable attorney's fees.

**SECOND CAUSE OF ACTION**
**Failure to pay overtime in violation of NRS 608.018 and 608.140**

123.    Plaintiff repeats, re-alleges, and incorporates herein by reference, the allegations contained in the foregoing paragraphs as though fully set forth herein.

124.    NRS 608.140 provides that an employee has a private right of action for unpaid

wages.

125.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

126.     NRS 608.018(1) provides as follows:

An employer shall pay 1 ½ times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 ½ times the minimum rate prescribed pursuant to NRS 608.250 works: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

127.     NRS 608.018(2) provides as follows:

An employer shall pay 1 ½ times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 ½ times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled week of work.

128.     Plaintiff demands that Defendant pay Plaintiff at 1 ½ times her regular rate of pay for all hours worked in excess of eight (8) hours in a workday and//or forty (40) hours per week during the relevant time period together with attorneys' fees, costs, and interest as provided by law.

129.     Under both the FLSA and the Nevada Revised Statutes, Ms. Pacheco's work does not qualify her as an employee exempt from overtime wages.

130.     As such, the employer was obligated to compensate Ms. Pacheco for any overtime worked.

131.     The Court should find that Ms. Pacheco was acting as an "non-exempt employee" and treat her accordingly under the instant set of facts.

132.     The Compensation agreed upon by Ms. Pacheco and Employer on or about December 20, 2021 was $33.65 per hour.

133.     This hourly wage was determined by dividing annual salary by fifty-two (52)

weeks and then dividing that number by forty (40) to indicate the standard work week.

134.     Ms. Pacheco worked at the office from 8:30 am to 5:00 pm Monday-Friday and remained working after hours at her home until 7:00 pm on Monday through Friday.

135.     Ms. Pacheco worked three (3) hours per day on Saturday and Sunday.

136.     Ms. Pacheco was employed for ten and a half (10.5) weeks between December 20, 2021 and March 4, 2022.

137.     Therefore, the net result of missed overtime per week is eighteen and a half (18 1/2) hours per week of unpaid overtime.

138.     This leaves a total of 195.5 hours of unpaid overtime at a pay rate of one and a half (1.5) times her hourly rate of $33.65.

139.     Ms. Pacheco is currently owed $9,867.86 in unpaid overtime.

140.     Plaintiff has been seriously harmed, economically and emotionally by this wrongful termination and is entitled to be fully compensated therefor.

141.     Plaintiff had to engage in the services of attorneys for representation in this matter and are entitled to an award of reasonable attorney's fees.

## THIRD CAUSE OF ACTION
### Waiting Time Penalties Pursuant to NRS 608.020-608.050 and NRS 608.140

142.     Plaintiffs incorporate all allegations in the preceding paragraphs as though fully set forth herein.

143.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

144.     NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

145.     NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefore; but the employee shall cease to draw such wages or salary 30 days after such default."

146.     Defendant was sent a detailed demand of all money owed to Plaintiff that was sent on March 30, 2022. See Attached Exhibit A, Demand Letter.

147.     Defendant received the Demand Letter on April 1, 2022. See Attached Exhibit C, Signed Certified Mail Receipt.

148.     Defendant acknowledged receipt of the Demand Letter on April 8, 2022, by email. See Attached Exhibit D, Email from Defendant's Counsel.

149.     Defendant's Representative responded to Plaintiff's Demand on April 27, 2022.

150.     Defendant refused to pay any portion of the overtime demand.

151.     Wherefore, the Plaintiff demands thirty (30) days of pay as waiting penalties under NRS 608.040 and 608.140, and thirty (30) days of pay as waiting penalites under NRS 608.040 and 608.140, together with attorneys' fees, costs, interest, and punitive damages, as provided by law.

**WHEREFORE**, Plaintiff prays for relief against Defendants, each of them, as follows:

## ON ALL CAUSES OF ACTION

1.     For compensatory damages in the principal amount in excess of fifteen-thousand dollars ($15,000.00) to be proven at trial;

2.     For punitive damages in the principal amount in excess of fifteen thousand dollars ($15,000.00) to be proven at trial;

3.      For special damages in the principal amount in excess of fifteen thousand dollars, ($15,000.00) to be proven at trial;

4.      For attorney's fees and costs incurred;

5.      For all damages in an amount to be proved at trial;

6.      For costs of suit herein incurred;

7.      For reasonable interest on amounts due; and,

8.      For any such other and further relief as this Court deems just and proper.


DATED this 29th day of April 2022.


**MULLINS & TRENCHAK, ATTORNEYS AT LAW**


/s/ Philip J. Trenchak
Philip J. Trenchak, Esq.
Nevada Bar No. 009924
Mullins & Trenchak, Attorneys at Law
1614 S. Maryland Parkway
Las Vegas, NV 89104

## **Table of Exhibits**

### **Exhibit A**
Demand Letter

### **Exhibit B**
Offer Letter

### **Exhibit C**
Certified Mail Signed Receipt
On April 1, 2022

### **Exhibit D**
Letter of Representation of Defendant
&
Accompanying Emails

### **Exhibit E**
Job Offer
&
Job Task Description

### **Exhibit F**
Complaint to Department of Business & Industry-Real Estate Division
&
Emails regarding write-up

# **Exhibit A**
Demand Letter

# MULLINS & TRENCHAK, ATTORNEYS AT LAW
### 1614 S. Maryland Pkwy, Las Vegas, NV 89104
### P: (702) 778-9444 F: (702) 778-9449
#### phil@mullinstrenchak.com

March 30, 2022

**Attn: VIRTUS COMMERCIAL, LLC**
1333 N. Buffalo Dr., Suite 120
Las Vegas, Nevada 89128
Office: (702) 787-0123
**Sent via: Email (chris@virtusco.com & amy@virtusco.com) Certified Mail and First Class United States mail**

**Re:   LETTER OF REPRESENTATION OF KATIE PACHECO INVOLVING HER EMPLOYMENT, UNLAWFUL TERMINATION, AND THE PRESERVATION OF EMPLOYMENT RECORDS**

To VIRTUS COMMERCIAL, LLC:

Ms. Pacheco has retained the above law office with regards to her termination by Virtus, and related disputes with Virtus including unpaid wages, misclassification of Ms. Pacheco as exempt from overtime, and unpaid overtime.

Litigation will almost certainly be necessary. Therefore, the following notice should be taken very seriously and shown to Counsel as soon as you are able to do so.

Do not contact Ms. Pacheco and do not approach Ms. Pacheco at this time or in the future. All communication must be solely made through our office using the above contact information. Furthermore, your associates must avoid Ms. Pacheco and refrain from any and all contact in any way, and in any form, including social media, text messages, and/or telephone calls. If there are any issues with abiding by this requirement a restraining order will be sought.

## I.  REQUEST FOR PRESERVATION OF MS. PACHECO'S EMPLOYMENT RECORDS

Ms. Katie Pacheco has retained our firm her in an action for unpaid wages as well as additional damages arising from an employee/employer and/or business relationship commencing on or about December 20, 2021, and abruptly ended upon Ms. Pacheco's termination and release from Employer's Company on or about March 04, 2022. Please note that this correspondence applies to any and all business records that would potentially show a portion and/or all of the hours used to determine Ms. Pacheco's paychecks.

With regards to the termination of Pacheco and related disputes (the "Dispute"), it is our understanding that certain records have been made unavailable to Ms. Pacheco. It is essential that you and your company understand that these records must be preserved for what looks to be pending litigation in the very near future. Any and all deletion of records will likely be viewed in an extremely unfavorable light by a court of law.

Your company possesses information and documents relevant to the Dispute. Given the likelihood of litigation to resolve the Dispute, this letter is intended to formally advise you of an obligation to identify, locate, and employ reasonable efforts to preserve all documents and information relating to the Dispute, including any and all original and/or electronic communications or documents related to the employment and termination of **Katie Pacheco**.

## A. Employment Records Subject to Preservation

This includes, but is not limited to, email and other employment-related accounts, payroll records, incident reports, and any other documents in or related to any file kept related to each individual's employment and/or other involvement with Virtus ("the firm"). This preservation duty supersedes any existing records or data management policies that would, in the ordinary course of operation, result in the destruction of such information. Therefore, you should implement records and data management policies that will result in the preservation of relevant /information stored in the firm's computer and paper-based storage and filing systems.

We would like to emphasize the importance of complying with this obligation. As you are aware, laws and rules prohibiting destruction of evidence apply to electronically stored information in the same way they apply to other evidence. Unlike other forms of evidence, however, electronic information is easily deleted, modified, or corrupted unless special precautions are affirmatively undertaken to preserve the information.

To comply with its preservation obligations, the firm must implement policies that prevent the destruction or alteration of any paper-based documents or electronically stored information relating to the Dispute and Ms. Pacheco. In some cases, the firm may have both paper-based and electronic versions of relevant documents. Your Company must preserve both versions. Electronic documents, and the storage media on which they reside, may contain information beyond that which appears in the printed documents.

## B. Types of Electronic Information Subject to Preservation.

Electronically stored information ("ESI") is information relating to the Dispute that was created, received, or maintained on the firm's computer systems regardless of data format. Please be aware that the firm's obligation to preserve ESI includes both the data files and all metadata associated with the relevant electronic files. Examples of file-types that contain ESI include, but are not limited to the following:

- Word-processed files, including drafts and revisions
- All records of clock-ins and clock-outs
- Records of all payments made to Katie Pacheco
- Email, and/or text messages, sent and received from internal and external sources

Katie Pacheco
March 30, 2022
Page 2 of 12

- Calendaring, task management and personal information management data such as Microsoft Outlook, Lotus Notes, or Google Calendar
- Spreadsheets, including drafts and revisions
- Databases
- Computer-aided design, or CAD, files, including drafts and revisions
- Presentation data or slide shows produced by presentation software such as Microsoft PowerPoint or Apple Keynote
- Graphs, charts and other data produced by project management software such as Microsoft Project
- Animations, images, audio, video and audiovisual recordings, including MP3, WAV, and voicemail files
- Data created with the use of personal data assistants or smartphones such as the AppleiPhone or iPad, RIM BlackBerry, Google Android-based phones or devices
- Data created with the use of document management software
- Email logging and routing logs and data files
- Voicemail, telephone logs, usage files or similar files generated by your telecommunications system
- Any and all Communications not specifically mentioned herein, is subject to preservation as is stated in this correspondence

## C. Additional Electronic Information Subject to Preservation

The following additional electronic information is also subject to preservation:

- Text Messages sent to Ms. Pacheco using all forms of instant messenger
- Any and all communications discussing Ms. Pacheco
- All communications existing since employment of Ms. Pacheco began
- All records on company and personal cell phones of all company personnel now currently existing
- Logs that record network usage by employees and other individuals
- Contact manager information
- All social media accounts under your client's control, including, but not limited to: Facebook, Twitter, Linkedin, Instagram, Flickr, Tagged, Meetup, LiveJournal, Pintrest, Google Plus, VK, Vine, MeetMe, Tumblr, ClassMates and Picassa
- Records and/or data from all applications
- Any other electronic information created, received, and/or maintained on computersystems used by the company and its employees

## D. Accessibility of Electronic Information Subject to Preservation.

The obligation to preserve relevant ESI extends beyond data files and metadata that are actively accessible on the firm's information systems today. The firm must also implement reasonable policies and procedures to preserve ESI that has been archived or transferred to backup tapes or

other storage media; that has been deleted from a computer hard drive or cellular telephone but remains recoverable using computer forensic tools; or that was created on or accessible only through obsolete hardware or software. Because the firm may be required to produce ESI on the original storage media, the firm should cease rotating and/or reusing backup tapes or other archival media that may contain relevant information. Backup media that could potentially contain ESI relating to the Dispute should be preserved in an unaltered condition. In addition, the firm should preserve any hard disks that are no longer in service, but which were in service during the period of time relevant to the Dispute.

## E . **Information Systems Subject to Preservation.**

Information storage systems covered by firm's preservation obligation include, but are not limited to: all desktop, laptop, and server hard drives; all removable media, such as CDROMs, DVDROMs, floppy disks, zip disks, or jazz drives; all backup and archive media; all PDAs, Blackberry devices, iPhones, iPads, Android devices, or other smartphones used by firm employees for business purposes; all external USB hard drives, flash or thumb drives, or solid state drives; and digital telephone systems storing and managing voicemail, phone logs, and similar data. Because employees may use information systems at home or other locations, the firm also must identify and preserve any relevant ESI that may be contained on those devices.

## F. **Miscellaneous System-related Information Subject to Preservation.**

ESI is often subject to security protocols that render it inaccessible to unauthorized users. In addition, ESI is often only accessible by using specific software applications. Therefore, the firm should retain all relevant security information such as user IDs, passwords, network access codes, decryption technologies and procedures, data compression software, or any other information or systems necessary to access the ESL. The firm should also retain all manuals, tutorials, or written instructions necessary to understand how to access and use any ESL software applications. If any ESI relevant to the Dispute can only be accessed by using legacy systems that are no longer in service, the firm should retain the hardware and software necessary to access the information.

**Ms. Pacheco and her Counsel request that Employer communicate to Ms. Pacheco's Counsel by <u>April 07, 2022,</u> to give all assurances that the evidence discussed herein will be preserved for discovery purposes in potential future litigation.**

## II. MS. PACHECO WAS UNLAWFULLY TERMINATED FOR ALLEGED DEFAMATION OF THE COMPANY ON MARCH 04, 2022.

Ms. Pacheco was hired for the position of property manager and began working on December 20, 2021. She was unlawfully terminated for alleged defamation of the company on March 4, 2022.

### A. **Unlawful termination of Ms. Pacheco**

Ms. Pacheco was told she was terminated for "defamation" of the company. This claim on the

<div style="text-align: right;">

Katie Pacheco
March 30, 2022
Page 4 of 12

</div>

part of the firm is erroneous because her alleged defamation was made in the form of a protected whistleblower complaint. Defamation, by its very definition, does not involve an employee making a complaint to a government entity that has authority over the legality of the operation of Employer's business.

## B. Ms. Pacheco's complaint the true reason for her unlawful termination

Ms. Pacheco was terminated based upon a complaint she filed with the Division of Business and Industry - Real Estate Division on **March 2, 2022**, a mere two days prior to her termination. Prior to that complaint, Ms. Pacheco had no indication that job performance had placed her position in jeopardy.

Ms. Pacheco's complaint alleged that her supervisor at the firm was at that time without a property manager license yet performing duties that can only be performed by someone with a property manager license. She was also reasonably concerned that such actions could have a negative impact on her license and the license of other employees under the supervision of this individual.

Ms. Pacheco was terminated on **March 4, 2022** for allegedly defaming the company, which did not occur. Ms. Pacheco requested a personnel action notice reflecting that the reason for termination was the unlawful reason given verbally but Ms. Pacheco was refused a written reason for termination.

## C. Ms. Pacheco's complaint was protected under Nevada law

Ms. Pacheco's complaint is protected because it is a whistleblowing complaint. According to Nevada law, whistleblowing activity, which serves a public purpose, is protected. In fact, Nevada holds that so long as employee's actions are not merely private or proprietary, but instead seek to further the public good, the decision to expose illegal or unsafe practices should be encouraged. *Allum v. Valley Bank of Nevada,* 114 Nev. 1313, 970 P.2d 1062 (1998).

## D. Request for Ms. Pacheco's Employment Records and Reason for Her Termination

Pursuant to NRS 613.075 Ms. Pacheco, through her counsel, does **formally request** a copy of her personnel file as well as a reason for termination pursuant to **NRS 613.075** which is provided below for the convenience of the reader of this correspondence:

> **NRS 613.075  Inspection by person who is subject of records; provision of copies upon request; cost of copies; person permitted to submit written explanation in response to information in records and to challenge accuracy; limitations.**
> 1.   Any person or governmental entity who employs and has under his or her direction and control any person for wages or under a contract of hire, or any labor organization referring a person to an employer for employment, shall, upon the request of that employee or person referred:
> (a) Give the employee or person referred a reasonable opportunity, during the usual hours of business, to inspect any records kept by that employer or labor organization containing information used:
> (1) By the employer or labor organization to determine the qualifications of that employee and any disciplinary action taken against the employee, including termination from that employment; or

Katie Pacheco
March 30, 2022
Page 5 of 12

(2) By the labor organization with respect to that person's position on its list concerning past, present and future referrals for employment; and

(b) Furnish the employee or person referred with a copy of those records.

↪ The records to be made available do not include confidential reports from previous employers or investigative agencies, other confidential investigative files concerning the employee or person referred or information concerning the investigation, arrest or conviction of that person for a violation of any law.

2. An employer or labor organization shall allow an employee or person referred to submit a reasonable written explanation in direct response to any written entry in the records of employment regarding the employee or person. Any such written explanation must be reasonable in length, in a format prescribed by the employer and maintained by the employer or labor organization in the records of employment.

3. An employer or labor organization shall not maintain a secret record of employment regarding an employee or person referred.

4. Upon termination of employment, an employer shall allow an employee to inspect the employee's records of employment within 60 days after his or her termination of employment and shall, if requested by that former employee within that period, furnish the former employee with a copy of those records.

5. An employer or labor organization may only charge an employee or person referred an amount equal to the actual cost of providing access to and copies of his or her records of employment.

6. The employee or person referred shall, if the employee or person contends that any information contained in the records is inaccurate or incomplete, notify his or her employer or the labor organization in writing of that contention. If the employer or labor organization finds that the contention of that employee or person is correct, it shall change the information accordingly.

7. No copies may be furnished to an employee or former employee under this section unless the employee or former employee has been or was employed for more than 60 days.

## E.  Conclusion

We believe Ms. Pacheco's termination was in retaliation for making a legal, privileged, and protected complaint to the state of Nevada, and therefore, the termination was unlawful.

## III.  EMPLOYER CONTRACTUALLY OBLIGATED TO PAY MS. PACHECO AN HOURLY WAGE, INCLUDING OVERTIME, IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT AND NEVADA REVISED STATUTES.

Ms. Pacheco agreed to accept an annual salary of $70,000 per year on or about December 20, 2021. Yet, due to the nature of Ms. Pacheco's work for the firm, she was a non-exempt employee under the Fair Labor Standards Act and under Nevada Revised Statutes.

She was placed on salary despite the fact that Ms. Pacheco was a non-exempt employee under the Fair Labor Standards Act and the Nevada Revised Statutes and therefore due overtime wages.

### A.  Ms. Pacheco a Non-Exempt Employee of the Firm According to the Fair Labor Standards Act

According to the Fair Labor Standards Act (FLSA), Ms. Pacheco was an hourly employee due overtime wages. Though there are several employee types that are exempt from overtime rules outlined in §13(a)(1) of the FLSA, those types of employees must meet certain requirements. The exemption that would come closest to applying to Ms. Pacheco's role with the firm is the Administrative Exemption, which is quoted below for the convenience of the reader:

Katie Pacheco
March 30, 2022
Page 6 of 12

To qualify for the administrative employee exemption, all of the following tests must be met:

- The employee must be compensated on a salary or fee basis (as defined in the regulations) at a rate not less than $684* per week;
- The employee's primary duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
- The employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

While Ms. Pacheco meets two of the three requirements for an administrative exemption, she was not allowed the "exercise of discretion" nor was she empowered to exercise "independent judgment with respect to matters of significance." In fact, the position offered very little autonomy and Ms. Pacheco was required to obtain authorization with little judgment based upon Ms. Pacheco's own discretion.

Therefore, Ms. Pacheco was a non-exempt employee due overtime wages according to the Fair Labor Standards Act.

In a case with a similar set of facts, the Federal District Court found that a Property Manager was improperly classified as exempt under the FLSA. See Harger v. Fairway Mgmt., Inc. United States District Court for the Western District of Missouri 2:15-cv-15-4232 (July 4, 2015).

## B.   Ms. Pacheco a Non-Exempt Employee of the Firm According to the Nevada Revised Statutes

According to the Nevada Revised Statutes, Ms. Pacheco was an employee due overtime wages. Like the FLSA, the Nevada Revised Statutes provides exceptions to the overtime wage rule in NRS 608.018; however, as is the case with the FLSA, none of the exemptions apply to Ms. Pacheco.

## C.   Conclusion

Under both the FLSA and the Nevada Revised Statutes, Ms. Pacheco's work does not qualify her as an employee exempt from overtime wages. As such, the employer was obligated to compensate her for any overtime worked.

In the probable event that Court Intervention is necessary, the Court would certainly find that Ms. Pacheco was acting as an **"non-exempt employee"** and treat her accordingly under the instant set of facts.

///
///
///

<div align="right">

Katie Pacheco
March 30, 2022
Page 7 of 12

</div>

## IV.   COMPENSATION DUE MS. PACHECO FROM OVERTIME HOURS WORKED.

The Compensation agreed upon by Ms. Pacheco and Employer on or about December 20, 2021 was $33.65 per hour. This hourly wage was determined by dividing annual salary by fifty-two (52) weeks and then dividing that number by forty (40) to indicate the standard work week.

### A. Calculation of overtime wages due Ms. Pacheco

Ms. Pacheco worked at the office from 8:30 am to 5:00 pm Monday-Friday and remained working after hours at her home until 7:00 pm on Monday through Friday. Ms. Pacheco worked three (3) hours per day on Saturday and Sunday. Ms. Pacheco was employed for ten and a half (10.5) weeks between December 20, 2021 and March 4, 2022. Therefore, the net result of missed overtime per week is eighteen and a half (18 1/2) hours per week of unpaid overtime. This leaves a total of 195.5 hours of unpaid overtime at a pay rate of one and a half (1.5) times her hourly rate of $33.65. Ms. Pacheco is currently owed $9,867.86 in unpaid overtime.

### B. Overtime rules as under NRS 608.018.

**NRS 608.018(1)&(2)   Compensation for overtime: Requirement; exceptions.**
1.   An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate set forth in NRS 608.250 works:
(a) More than 40 hours in any scheduled week of work; or
(b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.
2.   An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate set forth in NRS 608.250 works more than 40 hours in any scheduled week of work.

### C. NRS Pertaining to Wage Records

In regard to wage records, NRS 608.115(1) states the following:

1.   Every employer shall establish and maintain records of wages for the benefit of her or his employees, showing for each pay period the following information for each employee:
(a) Gross wage or salary other than compensation in the form of:
   (1) Services; or
   (2) Food, housing or clothing.
(b) Deductions.
(c) Net cash wage or salary.
(d) Except as otherwise provided in NRS 608.215, total hours employed in the pay period by noting the number of hours per day.

Katie Pacheco
March 30, 2022
Page 8 of 12

(e) Date of payment.

Under NRS 608.115(2), "The information required by this section must be furnished to each employee within **10 days after the employee submits a request.**" Additionally, NRS 608.115(3) requires that the employer retain these records for two (2) years.

## D. Request for Wage Records in Accordance with NRS 608.115

Pursuant to the foregoing, Ms. Pacheco requests all available records on the determination of her pay as listed in NRS 608.115 used in the compensation determination for the duration of her employment. This would include all information utilized to determine Ms. Pacheco's pay as listed above in NRS 608.115(1).

Therefore, pursuant to NRS 608.115, Ms. Pacheco legally and lawfully demands that Employer provide all records, including all payments and tracking of Ms. Pacheco hours, as well as all records of payments.

## E. Conclusion

Ms. Pacheco was a valuable Employee that was clearly not paid overtime which is not only unfair, it is a clear violation of established law in the state of Nevada.

## V.  THE FLSA AND THE NRS WERE VIOLATED BY EMPLOYER WHEN EMPLOYER REFUSED PAYMENT OF OVERTIME WAGES OWED TO MS. PACHECO.

The Employer has violated Nevada law requiring prompt payment of wages for work performed. See NRS 608.060. Ms. Pacheco appears to have been terminated for an unlawful reason ten and a half (10.5) weeks after Ms. Pacheco began working for Employer. Ms. Pacheco was told that she was terminated for defaming the employer's company. Under NRS 608.020, a discharged employee must be given immediate payment. Pursuant to NRS 608.040(1)(B), "If an employer fails to pay on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit or was discharged until paid or for 30 days, whichever is less."

## A. Calculation of Ms. Pacheco's Wages Owed by the Employer

Ms. Pacheco has base earnings of $33.65 per hour which equals $269.20 per day on average. Therefore, since the termination occurred on March 4, 2022, Ms. Pacheco is owed **$6,730.00** which is **$269.20** per day up to and including a full thirty (30) days after employment was terminated. See NRS 608.040(1)(B).

///
///
///

Katie Pacheco
March 30, 2022
Page 9 of 12

## B. NRS Liens and Penalties as a Result of Failure to Pay Wages

**NRS 608.050** provides that Ms. Pacheco possesses an employee's lien against the Employer's Company for the unpaid wages. Furthermore, **NRS 608.190** states the following:

> **Willful failure or refusal to pay wages due prohibited.** A person shall not willfully refuse or neglect to pay the wages due and payable when demanded as provided in this chapter, nor falsely deny the amount or validity thereof or that the amount is due with intent to secure for the person, the person's employer or any other person any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay or defraud the person to whom such indebtedness is due.

The NRS provides criminal penalties for refusing to pay wages earned, but this is clearly not Ms. Pacheco's concern.

## VI. EMPLOYER IS CURRENTLY UNLAWFULLY WITHHOLDING WAGES EARNED BY MS. PACHECO FOR WORK THAT HAS ALREADY BEEN PERFORMED.

Because Ms. Pacheco was incorrectly classified as an exempt employee, she is due overtime wages and those wages are in arrears.

## A. NRS Wage Payment Schedule and Penalties

**NRS 608.060** states that wages must be paid contemporaneously within the statutorily prescribed time frame in which those wages were earned. The Nevada Revised Statute is provided in full for the convenience of the reader of this correspondence:

> **NRS 608.060   Semimonthly payments; exceptions.**
> 1.   Except as otherwise provided in this chapter, all wages or compensation of employees in private employment is due semimonthly. All such wages or compensation earned and unpaid before the first day of any month is due not later than 8 a.m. on the 15th day of the month following that in which the wages or compensation was earned. All wages or compensation earned and unpaid before the 16th day of any month is due not later than 8 a.m. on the last day of the same month.
> 2.   Nothing contained in this section prohibits the contracting for the payment of or the payment of wages at more frequent periods than semimonthly.
> 3.   An employer in this State whose principal place of business is located, and whose payroll is prepared, outside of this State may designate one or more days in each month as fixed paydays for the payment of wages to an employee employed in:
> (a) A bona fide executive, administrative or professional capacity, as defined in 29 C.F.R. §§ 541.1, 541.2 and 541.3;
> (b) The capacity of outside salesperson, as defined in 29 C.F.R. § 541.5; or

Katie Pacheco
March 30, 2022
Page 10 of 12

(c)  The capacity of a supervisor, as defined in 29 U.S.C. § 152,
as those sections existed on October 1, 1993. The provisions of this subsection do not apply with regard to an employee whose wages are determined pursuant to a collective bargaining agreement.

4.   Every agreement made in violation of this section, except as provided in this chapter, is void, but any employee is entitled to payment of such wages or compensation for the period during which the wages or compensation was earned.

The criminal penalties that are discussed in this section for withholding of wages are above and beyond the scope of this correspondence. Employer would be well advised to consult with an attorney promptly upon receiving this letter to advise Employer accordingly. This statement should not be interpreted as threatening in any manner, but rather merely informative. Ms. Pacheco's intention is to obtain the financial remuneration for the work that she has performed as well as to obtain the financial records.

## B.  ANTICIPATION OF THE NECCESITY OF LITIGATION TO SETTLE THIS MATTER

Ms. Pacheco and her Counsel anticipate that litigation will be necessary, and that subpoenas, as well as a thorough forensic accounting will be necessary to uncover all records of payments and the significant underpayment of overtime made to Ms. Pacheco See NRS  608.115.

Trial is not a foregone conclusion, but it appears to be highly likely given the failure on Employer's part to pay Ms. Pacheco over time due and the unlawful termination of Ms. Pacheco on **March 4, 2022.**

## C.  MILEAGE

The mileage which was discussed and agreed upon as stated in the Offer Letter is attached as Exhibit A. The total amount that Ms. Pacheco is owed pursuant to the mileage log is **$292.77.** Id.

## D.  ATTORNEY FEES

Attorney Fees will begin to accrue five (5) days after this demand letter is received prior to a lawsuit. **NRS 608.140** provides the following regarding Attorney Fees:

**Assessment of attorney's fees in action for recovery of wages.**  Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of her or her employment, and shall establish by decision of the court or verdict of the jury that the amount for which he or she has brought suit is justly due, and that a demand has been made, in writing, **at least 5 days before suit was brought,** for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit.

<div align="right">
Katie Pacheco<br>
March 30, 2022<br>
Page 11 of 12
</div>

See NRS 608.140 (emphasis added).

Employer should note that all available reasonable Attorney Fees will be sought in this case. A lawsuit will be brought as soon as Attorney is able to after the five (5) day period specified in **NRS 608.140** has lapsed if Employer does not respond to the Demand herein.

### E. CONCLUSION

Ms. Pacheco was unlawfully terminated by Employer for making a good faith complaint protected by Nevada law. Ms. Pacheco is also currently owed **$9,867.86** in unpaid overtime. Ms. Pacheco is also owed a civil penalty of **$6,730.00** which consists of **$269.20** per day up to and including a full thirty (30) days after employment was terminated on March 4, 2022. See NRS 608.040(1)(B). Additionally, please note that **all records requested above** should be forwarded to the above law firm within the **ten (10) days** as specified in NRS 608.115(2). If this ten (10) day period passes by without Employer producing aforementioned records, a Complaint will be filed and the matter will be litigated.

The mileage which was discussed and agreed upon as stated in the Offer Letter is attached as Exhibit A. The total amount that Ms. Pacheco is owed pursuant to the mileage log is **$292.77.** Id.

Additionally, Ms. Pacheco, through her counsel, requests a copy of her personnel file as well as a reason for termination pursuant to NRS 613.075. All available damages relating to the unlawful termination, "Whistleblower Action," that was clearly executed because of the complaint to the Division of Business and Industry Real Estate Division will be sought. This request made under NRS 613.075, is not subject to the ten (10) day requirement under NRS 608.115(2). Furthermore, all documents requested herein will be subject to subpoena and will likely be discoverable in the Discovery process. I would like to emphasize that an opportunity exists to resolve this matter currently, but the window is quickly closing.

Thank you for your prompt attention to this matter. We urge you to quickly respond so that this matter can be resolved without Employer incurring additional fees pursuant to **NRS 608.020** and Attorney fees pursuant to **NRS 608.140**. Feel free to contact my office using the above contact information.

Sincerely,

PHILIP J. TRENCHAK, ESQ.
Attorney at Law

Enclosures: as stated

Katie Pacheco
March 30, 2022
Page 12 of 12

# EXHIBIT A

Mileage Log

Mileag Log

| Date | Location | Mileage | Reimbursent |
|------|----------|---------|-------------|
| 12/21/2021 | 3300 W Sahara Ave #350, Las Vegas, NV 89102 | 15.2 | 8.512 |
| 12/22/2021 | 1083 E Tropicana Ave, Las Vegas, NV 89119 | 28.4 | 15.904 |
| 12/22/2021 | 1481 W Warm Springs, Henderson, NV 89012 | 30.4 | 17.024 |
| 12/29/2021 | 6315-6542 E Russell Rd, Henderson, NV 89014 | 42.3 | 23.688 |
| 12/30/2021 | 9525 Hillwood | 23.6 | 13.216 |
| 11/5/2022 | 1311/1351 W Sunset, Henderson | 35.2 | 19.712 |
| 1/7/2022 | 10940-10960 S Eastern Ave | 21.2 | 11.872 |
| 1/14/2022 | 445-525 E. Windmill Lane | 22.6 | 12.656 |
| 1/18/2022 | 1785 E Sahara | 22.3 | 12.488 |
| 1/20/2022 | 1785 E Sahara | 22.3 | 12.488 |
| 1/28/2022 | 1311/1351 W Sunset, Henderson | 30.1 | 16.856 |
| 2/2/2022 | 6315-6542 E Russell Rd, Henderson, NV 89014 | 42.3 | 23.688 |
| 2/9/2022 | 4755 W Nevso Dr | 15.3 | 8.568 |
| 2/10/2022 | 10940-10960 S Eastern Ave | 25.3 | 14.168 |
| 2/14/2022 | 9975 S Eastern | 19.6 | 10.976 |
| 2/15/2022 | 6315-6542 E Russell Rd, Henderson, NV 89014 | 50 | 28 |
| 2/21/2022 | 445-525 E. Windmill Lane | 16.2 | 9.072 |
| 2/23/2022 | 4755 W Nevso Dr | 20 | 11.2 |
| 2/24/2022 | 10940-10960 S Eastern Ave | 26.3 | 14.728 |
| 3/2/2022 | 1785 E Sahara | 14.2 | 7.952 |
| | Total | | 292.768 |

# **Exhibit B**
## Offer Letter

December 7, 2021

Katie Pacheco

Dear Katie:

It is with great pleasure that Virtus Commercial offers you the position of Property Manager. Your start date is scheduled for on or about Monday, December 20th, 2021.

This is a full-time, exempt position that is not eligible for overtime pay after 40 hours in a workweek. We are offering you a starting base wage of $68,000/year.

Conditional to this offer is:
1) You must have an active Nevada Real Estate Salesperson License and Property Management Permit within 1 month of your start date (which may not be as stated above. That date is estimated.).
2) Your base wage will increase by $2,000/year if the condition is met within the stated timeline.

In addition, your compensation package includes the following:

- Insurance coverage – eligibility to participate in medical, dental, vision insurance coverage on the first of the month following 60 days with employer paying 100% of employee premium
- Paid time off – 10 days off during your first year, based on pro-rata basis throughout the year, eligible to use after the first 90 days
- Company paid holidays – approximately 10 per year, eligible upon hire
- Licensing and Education – company paid for maintaining salesperson license and property management permit.
- Mileage reimbursement for business miles at the current IRS standard rate
- Company provided cell phone

On your first day, you will participate in an orientation with Human Resources. This orientation will include completing employment forms, reviewing benefits, introduction to the team and touring the premises. Please bring appropriate documentation for the completion of your new hire paperwork, including proof that you are presently eligible to work in the United States for I-9 purposes. Failure to provide appropriate documentation within three (3) days of hire will result in immediate termination of employment in accordance with the terms of the Immigration Reform and Control Act.

We recognize that you retain the option, as does Virtus Commercial, of ending your employment at any time, with or without notice and with or without cause. As such, your employment with Virtus Commercial is at-will and neither this letter nor any other oral or written representations may be considered a contract for any specific period of time.

Please indicate your acceptance of our offer by signing below and returning a copy to me no later than Thursday, December 9, 2021. The terms and conditions of this offer supersede any prior written or oral communications with you concerning employment at Virtus Commercial. If you have any questions about this offer, please contact Stephanie Morales, President of Property Management and CFO at stephanie@virtusco.com.

We look forward to you joining our team and believe you will find this opportunity both challenging and rewarding.

Sincerely,

Stephanie Morales
President of Property Management and CFO

I agree to the terms of the employment set forth above.

_____          12/8/2021
Signature                                                    Date

1333 N Buffalo Dr, Ste 120 | Las Vegas, NV 89128
office: 702.787.0123 | fax: 702.463.0123 | www.virtusco.com



# **Exhibit C**
Certified Mail Signed Receipt
On April 1, 2022

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

VirtUS Commercial, LLC
1333 N. Buffalo Dr. #120
Las Vegas, NV 89128

9590 9402 6268 0274 1955 27

2. Article Number (Transfer from service label)
7020 0640 0000 1332 9896

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Theresa Roberts
☒ Agent
☐ Addressee

B. Received by (Printed Name)
Teresa Robertson
C. Date of Delivery
4/1

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☒ No

3. Service Type
☒ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

# **Exhibit D**

# Letter of Representation of Defendant
# &
# Accompanying Emails

# JacksonLewis

Jackson Lewis P.C.
Bank of America Plaza
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
Tel 702 921-2460
Fax 702 921-2461
www.jacksonlewis.com

April 8, 2022

**Via Email to:** phil@mullinstrenchak.com

Mullins & Trenchak, Attorneys at Law
Philip J. Trenchak, Esq.
1614 S. Maryland Parkway
Las Vegas, Nevada 89104

> **Re:    Katie Pacheco v. Virtus Commercial, LLC**

Dear Mr. Trenchak:

Jackson Lewis P.C. has just been retained to represent Virtus Commercial, LLC (the "Company") with regard to Katie Pacheco's demand for settlement based on the allegations contained in your letter dated March 30, 2022, to the Company.  Please direct all future communication regarding this matter to my attention.

I understand you requested a ten (10) day response by my client, however, having just been retained in this matter I require a reasonable period to investigate the substantive allegations in your demand letter.  Given the numerous events, and extensive legal claims outlined in your letter, please allow me to respond to your demand no later than April 22, 2022.  Please do not hesitate to contact my office if you would like to discuss this matter further.

Sincerely,
JACKSON LEWIS P.C.

*Joshua A. Sliker*
Joshua A. Sliker, Esq.

JAS/kc

4867-9920-3867, v. 1

**Subject:**   Re: Katie Pacheco v. Virtus Commercial, LLC
**Date:**   Friday, April 22, 2022 at 4:55:19 PM Pacific Daylight Time
**From:**   Philip Trenchak, Esq.
**To:**   Chandler, Kelley (Las Vegas)
**CC:**   Sliker, Joshua A. (Las Vegas)
**Attachments:** image041488.png

Joshua,

We have not heard from your office on this matter.

Thank you.

Warmly,

Philip J. Trenchak, Esq.
Mullins & Trenchak, Attorneys at Law
1614 S. Maryland Pkwy.
Las Vegas, NV 89104
P: (702) 778-9444
F: (702) 778-9449

CONFIDENTIAL INFORMATION: The information contained in this email is confidential and may be subject to Attorney-Client privilege. This email is intended solely for the use of the person or persons named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for the delivery of this communication to the above identified recipient, you are hereby notified that any dissemination, distribution or copying of this email is strictly prohibited. If you have received this email in error, please notify us immediately by return email, facsimile, or telephone (collect). Thank you for your anticipated cooperation in this matter.
IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that, to the extent this communication (or any attachment) addresses any tax matter, it was not written to be (and may not be) relied upon to (i) avoid tax-related penalties under the Internal Revenue Code, or (ii) promote, market or recommend to another party any transaction or matter addressed herein (or in any such attachment).

**From:** Philip Trenchak, Esq. <phil@mullinstrenchak.com>
**Date:** Friday, April 8, 2022 at 8:46 PM
**To:** Chandler, Kelley (Las Vegas) <Kelley.Chandler@jacksonlewis.com>
**Cc:** Sliker, Joshua A. (Las Vegas) <Joshua.Sliker@Jacksonlewis.com>
**Subject:** Re: Katie Pacheco v. Virtus Commercial, LLC

That will work. Can you respond to the preservation request in the meantime?

Get Outlook for iOS

**From:** Chandler, Kelley (Las Vegas) <Kelley.Chandler@jacksonlewis.com>
**Sent:** Friday, April 8, 2022 10:20:27 AM
**To:** Philip Trenchak, Esq. <phil@mullinstrenchak.com>
**Cc:** Sliker, Joshua A. (Las Vegas) <Joshua.Sliker@Jacksonlewis.com>
**Subject:** Katie Pacheco v. Virtus Commercial, LLC

SENT ON BEHALF OF JOSHUA A. SLIKER, ESQ.:

Mr. Trenchak:  Attached please find correspondence dated April 8, 2022 from Joshua Sliker.

Thank you,



**Kelley Chandler**
Legal Secretary

**Jackson Lewis P.C.**
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101
Direct: (702) 921-2459 | Main: (702) 921-2460
Kelley.Chandler@jacksonlewis.com | www.jacksonlewis.com

# **Exhibit E**
## Job Offer
## &
## Job Task Descriptiion

**Subject:** Fwd: Property Management Duties Clarification

**Date:** Friday, March 18, 2022 at 5:07:45 PM Pacific Daylight Time

**From:** Katie Brown

**To:** Philip Trenchak, Esq.

Sent from my iPhone

Begin forwarded message:

> **From:** Katie Pacheco <kpacheco@virtusco.com>
> **Date:** February 28, 2022 at 10:49:27 AM PST
> **To:** Stephanie Morales <stephanie@virtusco.com>, Jennifer Olson <jolson@virtusco.com>
> **Subject: Property Management Duties Clarification**
>
> Hello Stephanie & Jen,
>
> I wanted to reach out to receive a little more clarification on my job duties as I have not gotten a clear answer on the answer specifically.
>
> In previous positions, I have had a large amount of discretion to make decision on my property as I see fit. There was little I needed to obtain approval on. With that said, it seems that any decision I make, I need to have it approved by Jen. This is quite alright with me but I just want to make sure I am on the same page. I will take whatever direction I need but I also don't want to make judgement calls and then learn that I was not authorized to make a decision.
>
> Please advise.
>
> Thank you,



**Katie Pacheco** I property manager
NV Lic #: S.0186862 I PM.0167322
**t.** 702.787.0123 x427   **m.** 702.715.8484   **f.** 702.463.0123
**e.** kpacheco@virtusco.com   **w.** virtusco.com
**a.** 1333 N Buffalo Dr, Ste 120 Las Vegas, NV 89128

**Subject:** Fwd: Your Resume looks like a potential fit - Please Call Me

**Date:** Tuesday, April 26, 2022 at 2:51:04 PM Pacific Daylight Time

**From:** Katie Brown

**To:** Philip Trenchak, Esq.

**Attachments:** image001.png, image002.png, image003.png, image004.png, image005.png

Sent from my iPhone

Begin forwarded message:

> **From:** Paul Miller <Paul.Miller@cybercoders.com>
> **Date:** December 2, 2021 at 5:02:03 AM PST
> **To:** Katie Brown <klbrown711@gmail.com>
> **Subject: RE: Your Resume looks like a potential fit - Please Call Me**
>
> If you can, please try to send me that updated resume before our call today.
>
> Thank you,
> Paul .
>  PAUL MILLER
> Lead Recruiter
> Phone: 617.848.1118
> View my open jobs





> **From:** Katie Brown <klbrown711@gmail.com>
> **Sent:** Wednesday, December 1, 2021 3:39 PM
> **To:** Paul Miller <Paul.Miller@cybercoders.com>
> **Subject:** Re: Your Resume looks like a potential fit - Please Call Me
>
> Sounds good! Talk to you then!
>
> On Wed, Dec 1, 2021, 12:35 PM Paul Miller <Paul.Miller@cybercoders.com> wrote:
>
>> That sounds perfect. I will be around all day tomorrow. I am on EST . So call me whenever you are up and about and I would love to talk.
>>
>> Thank you,
>> Paul

PAUL MILLER
Lead Recruiter
Phone: 617.848.1118
View my open jobs
 

CopyRight Cybercoders 1/12/2021



**From:** Katie Brown <klbrown711@gmail.com>
**Sent:** Wednesday, December 1, 2021 3:34 PM
**To:** Paul Miller <Paul.Miller@cybercoders.com>
**Subject:** Re: Your Resume looks like a potential fit - Please Call Me

Hi Paul,
Yes, I'm sorry I'm in and out of appointments today. Do you have time anytime before noon tomorrow?

I can also send you my updated resume this evening.

Thank you,

Katie Pacheco
702-756-3601

On Wed, Dec 1, 2021, 12:08 PM Paul Miller <Paul.Miller@cybercoders.com> wrote:

Can we set up a time to speak ?

Thank you,
Paul

PAUL MILLER
Lead Recruiter
Phone: 617.848.1118
View my open jobs
____

**From:** Paul Miller
**Sent:** Wednesday, December 1, 2021 12:52 PM
**To:** Katie Brown <klbrown711@gmail.com>
**Subject:** RE: Your Resume looks like a potential fit - Please Call Me

Their target is $60-70K. I am available right now if you have a free moment. Or let me know what time you are available and I will try to work around your schedule.

Thank you,
Paul

PAUL MILLER
Lead Recruiter
Phone: 617.848.1118
View my open jobs

____

**From:** Katie Brown <klbrown711@gmail.com>
**Sent:** Wednesday, December 1, 2021 12:48 PM
**To:** Paul Miller <Paul.Miller@cybercoders.com>
**Subject:** Re: Your Resume looks like a potential fit - Please Call Me

Hello Paul,

Do you have time to talk today? Could you share with me the salary range?

On Tue, Nov 30, 2021, 1:23 PM Paul Miller <Paul.Miller@cybercoders.com> wrote:

Hi Katie,
Your resume looks like a potential fit for a commercial property management position I am working in Las Vegas, NV. I'd like to talk to you more about your background and tell you a bit about the position.

Please call me when you have a moment so we can go over the details: 617-848-1118

Thanks,
Paul

PAUL MILLER
Lead Recruiter

Phone: 617.848.1118
View my open jobs

🖸  in   f





We are an owner/operator of commercial real estate properties in the Las Vegas marketplace. As we grow we are looking for another property manager. The Commercial Property Manager is responsible for fulfilling the managers obligations under the property management agreement of a commercial real estate portfolio of retail and commercial office buildings in the Las Vegas area.

It is also the responsibility of the Property Manager not only to exhibit exceptional customer service when communicating with tenants, prospective tenants, owners, co-workers, and vendors but also to focus on productivity and results.

## What You Will Be Doing

- Initiate, contract, and administer all necessary services to maintain and enhance the value, the operating efficiency, and the physical appearance of the property.
- Perform all lease administration duties, perform collection duties and coordinate default proceedings.
- Ensures compliance with property management policies and procedures, codes, regulations and governmental agency directives.
- Maintain interface with tenants.
- Regular property visits; two property inspections per month with inspection form completed for one of these inspections.
- Process tenant services requests appropriately and promptly and according to the tenants lease and management guidelines.
- Manage vendors to address tenant and owner concerns and maintain property in class A condition.
- Handle on-call situations with tenants, vendors, and emergency situations.
- Maintain lease and vendor service agreement files.
- Perform appropriate collection duties to ensure timely and full payments from tenants including default proceedings and submission to collection agency.
- Abstract all leases and lease amendments in an accurate and timely manner.
- Manage monthly expenses according to the budget.
- Review invoices for propriety, code and approve invoices according to the departments deadlines and policies and procedures.
- Reconciliation of CAMs.
- Prepare annual budgets, monthly reports and other property required reporting.
- Attain comparative bids, award contract and oversee property and tenant improvements.
- Promote positive relationships with owners and tenants.
- Handle and responsible for transition of new and terminating properties.
- Provide exceptional customer service both internally and externally.
- Provide professionally written correspondence and verbal communications.
- Perform all other duties assigned by management.

## What You Need for this Position

- Minimum of 3 - 6 years of experience in commercial property management.
- Yardi Voyager experience preferred.
- Current NVRED Salesperson License and Property Management Permit
- Understanding of property management accounting processes.
- Knowledge of leases, lease terms and requirements.
- Knowledge of vendor service agreements.
- Ability to multitask and manage time efficiently.
So, if you are a Property Manager with experience, please apply today!

# **Exhibit F**

Complaint to Department of
Business & Industry-Real Estate
Division
&
Emails regarding write-up

**STATE OF NEVADA**
**DEPARTMENT OF BUSINESS AND INDUSTRY**
**REAL ESTATE DIVISION**

3300 W. Sahara Ave., Suite 350, Las Vegas, Nevada 89102 * (702) 486-4033
e-mail: realest@red.nv.gov * http://red.nv.gov/

## STATEMENT OF FACT
*(Please Print or Type)*

Your Name    Katie Pacheco

Address    111 S Gibson Rd., #3202, Henderson, NV 89012          *(Home Phone)*          *(Business Phone)*

                                *(Street)*                    *(City)*        *( State)*    *( Zip)*
Email Address klbrown711@gmail.com                                                          *(Optional)*

Please complete the following information concerning your complaint. Our ability to investigate the matter will depend largely upon your giving us a complete and detailed **sworn** statement. ***ATTACH ALL PERTINENT PAPERS AND/OR DOCUMENTS TO COPIES OF THIS FORM.*** **Keep originals for your file.** A copy of this statement may be offered to the party against whom you make this complaint.

Complaint against   Virtus Commercial

Name of firm    Virtus Commercial

Address    1333 N Buffalo Dr., #120, Las Vegas, NV 89128

Telephone No   (702) 787-0123                    Date of transaction

Where is the real property located?   Multiple locations

Did you seek legal counsel?   No              If "Yes," state name and address

Is any legal action pending?   Not at this time.

### CONSIDER THE FOLLOWING CAREFULLY

❖ This Division is not empowered to compel anyone to accede to demands of any kind, i.e., we cannot compel cancellation of listing agreements, purchase contracts, etc., or refunds of any kind. In this regard, we suggest that you seek private counsel to protect your interests, as **we are not authorized to give legal advice.**

❖ We will investigate the matter to determine whether the available evidence warrants administrative action against a licensee or subdivider. You will be advised of our conclusions when drawn. If it is determined that administrative action is warranted it may be necessary for you to appear and testify.

❖ Do not delay any civil action you might be considering in the matter, as considerable time will be required to complete our investigation and any subsequent action due to workload and time required to develop supporting evidence.

❖ If a court judgment has been obtained against a licensee for fraud, misrepresentation or deceit, a Real Estate Education, Research and Recovery Fund is available for petition if the judgment has not been satisfied.

*I declare under penalty of perjury under law of the State of Nevada that the foregoing attached statement consisting of _____ pages is true and correct.*

*Executed on*    03/02/2022                          *Katie Pacheco*

              *(Date)*                                          *(Signature)*

Revised:  03/20/17                    Page 1 of 2                                    514

**EXPLAIN FULLY:** *(Describe events in the order in which they happened, if possible. Please include dates and names.)*

In pursuant to NRS 645.018, property management is defined as follows '..the physical, administrative or financial maintenance and management of real property, or the supervision of such activities for a fee, commission or other compensation or valuable consideration, pursuant to a property management agreement.'

I am currently employed with Virtus Commercial. My manager/supervisor is Stephanie Morales. Stephanie's role was President of Property Management but was recently promoted to CFO. Stephanie is not currently a licensed property manager or salesperson but actively engages in activities that requires a property manager permit. For example, there is only 2 properties owners [of the the 14 properties that I was hired to manage] that I have spoke to. Stephanie has verbally told me that unless she otherwise states, she deals with 3rd party property owners directly about all issues. I was also directed by Stephanie to not spend too much time on certain properties that we don't do renewals for because these accounts were not very profitable for the company.
Stephanie is also the individual who is overseeing the real estate activities as the broker of record, I have never spoke to or witness at our office. I have been employed with Virtus since 12/2021. When I have questions concerning property management laws or tenant issues, I am expect to goto Stephanie. I have never met my broker in my almost 3-month employment.
Stephanie is also the individual our senior property manager has to goto to report rent collections issues and ask for approval to issue 5-day notices, approving invoice and is all around the person who will get necessary further approvals from property owners.

I am concerned being supervised and being told to seek advice from an individual who is not licensed could put me and other licensees at risk for liability if information given is not correct. I fear that questionable ethics and disregard for the local laws are grossly negligent and put licensees and Virtus' current clients at risk. I have include some emails to validate the claims stated above.

**SUBMIT COMPLETED FORM TO COMPLIANCE**
**3300 W. SAHARA AVE., SUITE 350, LAS VEGAS, NEVADA 89102**

**STEVE SISOLAK**
*Governor*

## STATE OF NEVADA



**TERRY REYNOLDS**
*Director*

**SHARATH CHANDRA**
*Administrator*

### DEPARTMENT OF BUSINESS AND INDUSTRY
## REAL ESTATE DIVISION
www.red.nv.gov

March 4, 2022

Katie Pacheco
111 S Gibson Rd., #3202
Henderson, NV 89012
Email: klbrown711@gmail.com

RE:   PACHECO vs. MORALES          RE:   NRED vs. EMANUEL
      CASE NO.  2022-140                 CASE NO.:2022-141

Dear Ms. Pacheco:

This is to acknowledge receipt of your complaint.  A case has been opened and an investigation will be conducted.  The investigation of this case has been assigned to me.  Please direct all correspondence **via email or USB** related to this case to my attention.  Ensure you label all correspondence with the case name and number. Thank you for your patience and cooperation during the Division's investigation of this case.

The following are important facts which you should be aware:

- **The Division cannot compel cancellation of listing agreements, purchase contracts or refunds of any kind.**

- **Do not delay any civil action you might be considering regarding this matter.**

- **If a court judgment has been obtained against a licensee for fraud, misrepresentation or deceit, the Real Estate Education, Research and Recovery fund is available for petition if the judgment has not been satisfied.**

You may be called to testify should this matter proceed to hearing.  Otherwise, you will be advised of the disposition of this matter when our investigation is completed.  Should you have any questions, you may contact me at (702) 486-4518 or mvmartin@red.nv.gov.  If you have any other information to submit, please send it to the above email address.

Sincerely,

*Maria Martin*

Maria Martin

3300 W. Sahara Avenue, Suite 350, Las Vegas, Nevada  89102-3203       Telephone: (702) 486-4033      Fax: (702) 486-4067
1818 E. College Parkway, Suite 110, Carson City, Nevada  89706-7986     Telephone: (775) 684-1900      Fax: (775) 687-4868

Compliance/Audit Investigator

**Subject:** Fwd: Broker or Managing Broker?
**Date:** Friday, March 4, 2022 at 1:26:59 PM Pacific Standard Time
**From:** Katie Brown
**To:** Philip Trenchak, Esq.

This was the tip of the iceberg

Sent from my iPhone

Begin forwarded message:

> **From:** Katie Pacheco <kpacheco@virtusco.com>
> **Date:** March 3, 2022 at 3:13:44 PM PST
> **To:** Stephanie Morales <stephanie@virtusco.com>, Jennifer Olson <jolson@virtusco.com>
> **Cc:** Geri <geri@virtusco.com>, Katie Brown <klbrown711@gmail.com>
> **Subject:** Re: Broker or Managing Broker?
>
> Hello all,
>
> Just wanting to follow up as I feel the matter is urgent and should be dealt with as such. I will NOT purposefully violate the law as a means to retain my employment especially since there is a pending investigation with NRED. I would like to know how/if it is legal for me to conduct my duties when the broker has never been onsite since I started working here in 12/20/2022 and there are several individuals performing duties without proper licesning. I fear that me preforming my duties might be illegal as there is no broker supervision and it is a violation to assist others in unlicensed activities.
>
> I would also like to request that the retaliatory behavior stop as I just want to make sure that I am not putting my license in jeopardy.
>
> Thank you,
>
>  **Katie Pacheco** | property manager
> NV Lic #: S.0186862 | PM.0167322
> **t.** 702.787.0123 x427   **m.** 702.715.8484   **f.** 702.463.0123
> **e.** kpacheco@virtusco.com   **w.** virtusco.com
> **a.** 1333 N Buffalo Dr, Ste 120 Las Vegas, NV 89128
>
> On Mar 3, 2022, at 11:35 AM, Katie Pacheco <kpacheco@virtusco.com> wrote:
>
> Hello again,
>
> Please see a direct quote from NRS 645.230 & NRS 645.235. Its states that administrative fines for engaging in certain conduct without a license (including assisting or offering to assist others) can impose administrative fine against individuals involved. Since you wrote me up for a performance issues and the next issue will result in termination of employment. I would like to know how I can legally conduct my duties?

**NRS 645.230   Unlawful to engage in certain conduct without license or permit or without complying with certain provisions of chapter; power of Real Estate Division to file complaint with court and assist in prosecution of violation; prosecution by district attorney or Attorney General.**

1.   It is unlawful for any person, limited-liability company, partnership, association or corporation to engage in the business of, act in the capacity of, advertise or assume to act as, a:

(a)  Real estate broker, real estate broker-salesperson or real estate salesperson within the State of Nevada without first obtaining the appropriate license from the Real Estate Division as provided for in this chapter;

(b)  Property manager within the State of Nevada without first obtaining from the Real Estate Division as provided for in this chapter a license as a real estate broker, real estate broker-salesperson or real estate salesperson and a permit to engage in property management;

(c)  Designated property manager within the State of Nevada without complying with the provisions of NRS 645.6055;

(d)  Business broker within the State of Nevada without first obtaining from the Real Estate Division as provided for in this chapter a license as a real estate broker, real estate broker-salesperson or real estate salesperson and a permit to engage in business as a business broker issued pursuant to the provisions of NRS 645.863; or

(e)  Designated business broker within the State of Nevada without complying with the provisions of NRS 645.867.

2.   The Real Estate Division may prefer a complaint for a violation of this section before any court of competent jurisdiction and may assist in presenting the law or facts upon any trial for a violation of this section.

3.   The district attorney of each county shall prosecute all violations of this section in their respective counties in which violations occur, unless prosecuted by the Attorney General. Upon the request of the Administrator, the Attorney General shall prosecute any violation of this section in lieu of the district attorney.

[1:150:1947; 1943 NCL § 6396.01] — (NRS A 1963, 666; 1973, 1100; 1981, 514; 1985, 1262; 1997, 166, 957; 2003, 1290; 2005, 649)


**NRS 645.235   Administrative fine for engaging in certain conduct without license, permit, certificate, registration or authorization; procedure for imposition of fine; judicial review; exceptions.**

1.   In addition to any other remedy or penalty, the Commission may impose an administrative fine against any person who knowingly:

(a)  Engages or offers to engage in any activity for which a license, permit, certificate or registration or any type of authorization is required pursuant to this chapter, or any regulation adopted pursuant thereto, if the person does not hold the required license, permit, certificate or registration or has not been given the required authorization; or

(b)  Assists or offers to assist another person to commit a violation described in paragraph (a).

2.   If the Commission imposes an administrative fine against a person pursuant to this section, the amount of the administrative fine may not exceed the amount of any gain or economic benefit that the person derived from the violation or $5,000, whichever amount is greater.

3.   In determining the appropriate amount of the administrative fine, the Commission shall consider:

(a)  The severity of the violation and the degree of any harm that the violation caused to other persons;

(b)  The nature and amount of any gain or economic benefit that the person derived from the violation;

(c)  The person's history or record of other violations; and

(d)  Any other facts or circumstances that the Commission deems to be relevant.

4.   Before the Commission may impose the administrative fine, the Commission must provide the person with notice and an opportunity to be heard.

5.   The person is entitled to judicial review of the decision of the Commission in the manner provided by chapter 233B of NRS.

6.   The provisions of this section do not apply to a person who engages or offers to engage in activities within the purview of this chapter if:

(a)  A specific statute exempts the person from complying with the provisions of this chapter with regard to those activities; and

(b)  The person is acting in accordance with the exemption while engaging or offering to engage in those activities.

(Added to NRS by 2003, 1289)




**Katie Pacheco** I property manager
NV Lic #: S.0186862 I PM.0167322
**t.** 702.787.0123 x427   **m.** 702.715.8484   **f.** 702.463.0123
**e.** kpacheco@virtusco.com   **w.** virtusco.com
**a.** 1333 N Buffalo Dr, Ste 120 Las Vegas, NV 89128

On Mar 3, 2022, at 10:52 AM, Katie Pacheco <kpacheco@virtusco.com> wrote:

Stephanie,

I would kindly like to know what duties I can or can't do with a broker or designated property manager supervising this matter.

I am concerned if I am violating the law by conducting property management duties without a broker or with having a broker who is absence for prolonged periods of time as Virtus does not have a designated property manager or broker salesperson as per the Real Estate Division. I have been with Virtus since 12/20/21 and have never seen our broker or had any kind of communication with as all my direction comes from Stephane and  Jennifer.

If I am misunderstanding the legality of this issue, please explain so I can be reassured that conducting my job duties would not be violating the law.

Thank you,




**Katie Pacheco** I property manager
NV Lic #: S.0186862 I PM.0167322
**t.** 702.787.0123 x427   **m.** 702.715.8484   **f.** 702.463.0123
**e.** kpacheco@virtusco.com   **w.** virtusco.com
**a.** 1333 N Buffalo Dr, Ste 120 Las Vegas, NV 89128

On Mar 3, 2022, at 9:31 AM, Katie Pacheco <kpacheco@virtusco.com> wrote:

Stephanie,

I do believe that some property management duties do qualify as real estate transactions (renewal contracts, assignments, etc.).

As you have verbally stated to me when I started, you handle all correspondence with property owners for 3rd party management that I will not contact them unless you state otherwise. Unfortunately, you are not licensed or permitted to do so according to NRS 645.230. For example, yesterday (03/02/22) at 8:22 AM you sent an email (attached) advising Geri and myself that you would reach out to the Landlord of 9975 S Eastern regarding GameStop's Lease Renewal. On the property list attached, this property is a 3rd party owner. This is just one example of the many unlicensed, unsupervised, illegal real estate activity that are taking place at Virtus Commercial. If Chris, the broker whom I have never witnessed at our office, is aware of all real estate activities, then why would he allow 2 property managers to manager 3rd party management contracts with any kind of license or permit enabling them to do so.

Additionally, if Jennifer is the licensee in charge of overseeing these activities, why does Jennifer have to get approval from you, in regard to property management matters since I don't see on NRED website that you are licensed/permitted.

I accepted this position with Virtus because I felt Virtus was a company that conducted themself ethically. I would have never imagine the complete lack of care or regard for their clients or employees. My real estate license and reputation means to much to me to put it at jeopardy. My real estate license is my livelihood.

I have sent a complaint to the Nevada Real Estate Division for the unlawful activities I have witness here at Virtus Commercial.

Thank you,

 **Katie Pacheco** | property manager
NV Lic #: S.0186862 | PM.0167322
**t.** 702.787.0123 x427   **m.** 702.715.8484   **f.** 702.463.0123
**e.** kpacheco@virtusco.com   **w.** virtusco.com
**a.** 1333 N Buffalo Dr, Ste 120 Las Vegas, NV 89128

&lt;Re GameStop 5294 Henderson Renewal.pdf&gt;
&lt;Property List.xlsx&gt;

On Mar 2, 2022, at 5:57 PM, Stephanie
Morales <stephanie@virtusco.com> wrote:

Chris Emanuel is in constant communication
with me on numerous Virtus Commercial
business matters. He is fully aware of all
activities at Virtus Commercial. You are not
doing any real estate transactions; that is done
by Geri Jameson and Chris Emanuel.

You are receiving property guidance from
Jennifer Olson who is your supervisor and she
has NVRED license and Property Management
Permit.

On Wed, Mar 2, 2022 at 3:58 PM Katie
Pacheco <kpacheco@virtusco.com> wrote:
Hello Stephanie and Geri,

I wanted to reach out regarding my concerns
with our absences of a broker or managing
broker who oversees real estate activities.
As I currently understand it, Chris is our
broker but I have actually never met him or
even spoken with him. As I understand the
law, I know that we need to have a broker or
managing broker who supervises all real
estate activities but I wasn't aware of
anyone else employed who is a licensed
broker or who is overseeing. Currently, when
I have high touch issues property
managagement, I goto Stephanie or Jen. But
I don't believe Stephanie is licensed to be
overseeing these trasnactions and Jen is not
a broker.

I fear the repercussion of not having proper
guidance and the potential adverse affects it
could have on my licenses. I just want to
make sure I am covering all my bases.

Thank you,




**Katie Pacheco** I property manager
NV Lic #: S.0186862 I PM.0167322
t. 702.787.0123 x427  m. 702.715.8484  f. 702.463.0123
e. kpacheco@virtusco.com  w. virtusco.com
a. 1333 N Buffalo Dr, Ste 120 Las Vegas, NV 89128